```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION


SWANSCAN, L.L.C. D/B/A          §
SWANEPOEL & SCANDROL SAFARIS,   §
                                §
     Plaintiff,                 §
v.                              §       CIVIL ACTION NO. H-05-3306
                                §
ERIC WHETSTONE,                 §
                                §
     Defendant.                 §
```

MEMORANDUM AND ORDER

Pending are cross motions for summary judgment filed by Plaintiff Swanscan, L.L.C., d/b/a Swanepoel & Scandrol Safaris and Defendant Eric Whetstone (Documents No. 50 & 51). After carefully considering the motions, responses, and the applicable law, the Court concludes as follows.

I. Background

Much of the background for this case is found in the Court's Memorandum and Order entered February 28, 2006, in which the Court determined that the two Safari agreements made by Plaintiff and Defendant are binding and enforceable contracts. One was for a hunting safari in Tanzania, in July, 2005, for which the base safari rate was $73,800, with one-half to be paid in "[a]n initial deposit in the amount of $36,900 to confirm the safari." The second contract was for a hunting safari in South Africa scheduled

in November, 2005, for a lion and a rhino, with trophy fees totaling $125,000. Again, this contract required an initial deposit in the amount of $62,500 required to confirm the safari. Although Defendant paid neither of the deposits when the contracts were signed, Plaintiff began making arrangements for Defendant's safaris, including Plaintiff's payment of a non-refundable deposit of $62,500 on the lion/rhino hunting safari in South Africa.

In the months that followed execution of the contracts, Plaintiff's representatives repeatedly contacted Defendant and requested that he pay the initial deposits. It is uncontroverted that during these conversations Defendant never stated that he intended not to take the hunting safaris. (Plaintiff contends that Defendant repeatedly made excuses for his delay in paying the deposits and reassured Plaintiff that he was "good for it.") Plaintiff continued to make preparations for the hunting safaris and periodically sent letters to Defendant requesting payment and providing details about the trips. Not until May 17, 2005, according to Plaintiff, did Plaintiff's representatives learn from another of their clients that Defendant was not going on the safaris for which he had contracted. Defendant never paid any sums due under the contracts.

In the cross motions for summary judgment, the central issue is whether Plaintiff or Defendant breached the contracts and, if breached by Defendant, whether Plaintiff is entitled to recover

liquidated damages under the contracts. Both contracts are prepared on the same form and contain essentially the same terms. The following is a pertinent excerpt from the Tanzania safari contract, which is identical in these provisions to the South Africa safari contract, except for the differences shown in brackets for prices and dates, which bracketed excerpts are from the South Africa contract:

> TERMS AND CONDITIONS. CLIENT EXPRESSLY UNDERSTANDS AND AGREES AS FOLLOWS:
>
> 1) An initial deposit in the amount of $36,900 [$62,500] required to confirm the safari.
>
> 2) An additional deposit in the amount of $0.
>
> 3) Final payment of Base Safari Cost . . . in the amount of $36,900 [$62,500] is due and payable on April 3, 2005 [July 1, 2005].
>
> 4) FAILURE TO TIMELY AND FULLY PAY ANY OF THE ABOVE PAYMENTS, *MAY*, AT THE SOLE ELECTION OF SWANEPOEL & SCANDROL SAFARIS, RESULT IN CANCELLATION OF THE SAFARIS; ALL MONEY PAID PRIOR TO SUCH CANCELLATION SHALL BE FORFEITED BY CLIENT AND RETAINED BY SWANEPOEL & SCANDROL SAFARIS AS LIQUIDATED DAMAGES.

Document No. 50 ex. B ¶ 4.

## II.  Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the

4

factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

### III. Discussion

A. Breach of Contract

Plaintiff contends that Defendant's uncontroverted failure to pay any of the sums due under the safari agreements warrants judgment in its favor on the breach of contract claims. "The essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." Aguiar v. Segal, 167 S.W.3d 443, 450 (Tex. App.-- Houston [14th Dist.] 2005, pet. denied); *accord* Pegram v. Honeywell, Inc., 361 F.3d 272, 288 (5th Cir. 2004). Defendant asserts that under each contract, payment of the deposit is a condition precedent to Plaintiff's obligation to perform, the non-occurrence of which precludes Plaintiff's claim. The Court considered and rejected essentially this same argument in its Memorandum and Order entered February 28, 2006, at pages 8-10. "A condition precedent is an event that must happen or be performed

5

before a right can accrue to enforce an obligation." <u>Centex Corp. v. Dalton</u>, 840 S.W.2d 952, 956 (Tex. 1992); *accord* <u>Hohenberg Bros. Co. v. George E. Gibbons & Co.</u>, 537 S.W.2d 1, 3 (Tex. 1976). "While no particular words are necessary for the existence of a condition, such terms as 'if,' 'provided that,' 'on condition that,' or some other phrase that conditions performance, usually connote an intent for a condition rather than a promise." <u>Hohenberg Bros. Co.</u>, 537 S.W.2d at 3.  Absent such language, the court must examine the contract as a whole to determine whether the provision is a covenant or a condition, bearing in mind that provisions should not be construed as conditions if to do so would result in forfeiture. *See* <u>Criswell v. European Crossroads Shopping Ctr., Ltd.</u>, 792 S.W.2d 945, 948 (Tex. 1990); <u>Marsh v. Marsh</u>, 949 S.W.2d 734, 744 (Tex. App.--Houston [14th Dist.] 1997, no pet.).

    Both agreements (1) obligate Defendant to pay the deposit and the balance for the safari according to a prescribed schedule; and (2) grant Plaintiff the right to terminate the contract if Defendant fails timely to pay any of the installments.  Thus, receipt of a deposit may be a condition precedent to Plaintiff's duty to arrange Defendant's safaris, but it does not qualify Defendant's independent obligation to pay the sums required of him under the contracts.  Defendant admittedly did not pay either the deposit or the final payment required under each contract, and

Plaintiff is therefore entitled to summary judgment on its breach of contract claim on both contracts.

Genuine issues of material fact have been raised in the summary judgment evidence on *when* Defendant repudiated the contracts, whether Plaintiff mitigated its damages after learning of Defendant's repudiation, and the amounts of Plaintiff's actual damages, which may also have bearing on whether the liquidated damages clause, if construed as Plaintiff contends, is enforceable.

B.   Defendant's Counterclaims

Plaintiff contends that no evidence supports Defendant's claim that Plaintiff breached a contractual promise "that the Hunts would be Fair Chase Hunts when, in fact, they would not be Fair Chase Hunts, that is, they were planned to take place within an enclosure." The written agreements contain no representations regarding the nature of the hunts. Defendant, in his deposition, also admitted that Plaintiff did not orally represent that the hunts were or were not "fair chase hunts" before he signed the agreements, and admits that at the time of contract, he merely "assume[d]" that the animals were not confined within a fenced area. Because Defendant has failed to raise a fact issue that any contractual promise was made and breached by Plaintiff, his contract claim must be dismissed.

7

The absence of any summary judgment evidence to raise a fact issue that Plaintiff made a material misrepresentation or committed a false, misleading, or deceptive act, requires dismissal of Defendant's claim for fraud, negligent misrepresentation, and violation of the Texas Deceptive Trade Practices Act. *See, e.g.*, <u>Hugh Symons Group, PLC v. Motorola, Inc.</u>, 292 F.3d 466, 468 (5th Cir. 2002)(listing as an element of a DTPA claim a "false, misleading, or deceptive act[]"); <u>Fed. Land Bank Ass'n of Tyler v. Sloane</u>, 825 S.W.2d 439, 442 (Tex. 1991) (stating that an action for negligent misrepresentation requires proof of a false "representation . . . made by a defendant in the course of his business . . ."); <u>Harrison v. Bass Enters. Prod. Co.</u>, 888 S.W.2d 532, 536 (Tex. App.--Corpus Christi 1994, no writ) (requiring proof of a "material misrepresentation or omission" to sustain a claim of fraud). Accordingly, the Court grants Plaintiff's motion for summary judgment on Defendant's counterclaims.

## IV. <u>Order</u>

It is therefore

ORDERED that Plaintiff Swanscan, L.L.C, d/b/a Swanepoel & Scandrol Safaris' Motion for Summary Judgment is GRANTED IN PART, and Defendant Eric Whetstone is ADJUDGED to have breached his two safari contracts with Plaintiff; and Defendant's counterclaims for breach of contract, fraud, negligent misrepresentation, and

violation of the Texas Deceptive Trade Practices are DISMISSED on the merits.  In all other respects, Plaintiff's motion is DENIED.  It is further

ORDERED that Defendant's Motion for Summary Judgment is DENIED.

Remaining for trial is the amount of Plaintiff's damages and reasonable attorney's fees.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 8th day of January, 2007.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE